Borenstein, J.
INTRODUCTION
The plaintiff, National Grange Mutual Insurance Co., Inc. (“NGMI”), filed an action against Virginia O’Toole (“O’Toole”), asserting that the same is liable for damages incurred by NGMI pursuant to the execution and delivery of a “General Agreement of Indemnity,” and against Ellen Sesia (“Sesia”), as a result of her receipt of valuable real estate which had been fraudulently conveyed to her by O’Toole. NGMI now moves for summary judgment pursuant to Mass.R.Civ.P. 56. A hearing on the motion was held before this court on June 7, 1996. For the reasons set forth below, NGMI’s motion is ALLOWED with respect to Count I and DENIED with respect to Count II.
BACKGROUND
On September 23, 1986, O’Toole individually, her husband, Paul O’Toole, and Comiskey Electric Co., Inc., of which Paul O’Toole was owner, executed and delivered a general agreement of indemnity to the plaintiff.[1] Throughout 1993, Comiskey experienced serious financial difficulties and finally went out of business on November 11, 1993. O’Toole filed for bankruptcy on May 3, 1995. NGMI’s net loss is $547,485.55.[2]
On November 2, 1993, and recorded November 5, 1993, O’Toole conveyed by Quit Claim deed a summer home and real property located at Lake Washakum in Sterling, Mass., for no or nominal consideration to her sister, Sesia. O’Toole admitted at her deposition, that at the time of the conveyance, she was aware and did have knowledge that Comiskey was financially in jeopardy. O’Toole conveyed the property for the admitted purpose of protecting it from her creditors.[3] O’Toole asserts that she was holding the subject property in trust pursuant to an oral trust agreement between she and her mother. O’Toole’s mother allegedly retains a life estate in the property with a remainder in fee simple absolute to her four daughters, O’Toole, Sesia and two other daughters. There is no written documentation in existence to substantiate the alleged trust. NGMI has been granted an attachment on O’Toole’s interest in the subject property.
SUMMARY JUDGMENT STANDARD
Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c). The existence of disputed facts is consequential only if those facts have a material bearing on the disposition of the case. Norwood v. Adams-Russell Co., 401 Mass. 677, 683 (1988). A party in a civil action moving for summary judgment on a claim on which the opposing party will have the burden of proof at trial is entitled to summary judgment if it demonstrates by reference to the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “(T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” Lalonde v. Eissner, 405 Mass. 207, 209 (1989). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion for summary judgment.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
DISCUSSION
A. Count I
There is no genuine issue of material fact in respect to O’Toole’s liability to NGMI in Count I. O’Toole signed the indemnity agreement and admitted in the answer to the complaint that she executed the same. As to O’Toole’s claim of being discharged from the debt because of the bankruptcy proceedings, “it still remains true that in general the effect of a discharge is to be raised by pleading it as a bar when the creditor attempts to enforce his claim.” Watts v. Ellisthorpe, 135 F.2d 1, 3 (1st Cir. 1943). Pursuant to Mass.R.Civ.P. 8(c), a discharge in bankruptcy is an affirmative defense and must be set forth affirmatively in a pleading to a preceding pleading. Mass.R.Civ.P. 8(c). An omission of an affirmative defense from answer to the complaint constitutes a waiver of that *711 defense. Coastal Oil New England, Inc. v. Citizens Fuels Corp., 38 Mass.App.Ct. 26 (1995), see also Mass.R.Civ.P. 8(c).
Furthermore, NGMI has not waived any rights because it failed to object at the Bankruptcy hearing. See e.g. 11 U.S.C.A. 524. A creditor may permit a debtor to receive a general discharge of personal liability and “thereafter bring suit against the debtor on the theory that the debtor’s discharge does not wipe out the debt.” Watts, 135 F.2d at 3. Alternatively, if it was determined that O’Toole was discharged from the debt based on the bankruptcy proceedings, under 11 U.S.C.A §524(e), a “discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.” 11 U.S.C.A §524(e). O’Toole’s discharge in bankruptcy would, therefore, not affect the liability of Sesia or NGMI’s rights with respect to the subject property.
B. Count II
Pursuant to M.G.L.c. 203, §1, all “trusts concerning land . . . shall be created or declared ... by a written instrument . . .” M G.L.c. 203, §1. Even though this renders oral trusts invalid, it does not prevent parties from recognizing and effectuating oral agreements or trusts. First National Bank of Boston v. Gustie (In re Gustie), 36 B.R 473 (D.C. Mass. 1984). If a trustee conveys trust property to a beneficiary, the oral trust becomes fully valid and enforceable despite Chapter 203. Id at 476. In addition, a statute of frauds defense “is personal to the maker of the contact and cannot be set up by a third person.” Hoffman v. Charlestown Five Cent Savings Bank, 231 Mass. 324, 329 (1918) (citations omitted). As against creditors a contract within the statute of frauds is, therefore, effective even though the statute is not satisfied. Id.
Nevertheless, “every conveyance made ... by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made . . . without a fair consideration.” M.G.L.c. 109A, §4. Additionally, conveyances made with actual intent to defraud creditors are also invalid. M.G.L.c. 109A, §7. Although fraud is never presumed, Mullins v. Riopel, 76 N.E.2d 633 (1948), the natural consequences of conveyances by persons with heavy debt are presumed to be intended. Hutchins v. Mead, 108 N.E. 67 (1915). If a transfer is made without the necessary elements to establish a true trust, it is in fraud of creditors, even though there is no expressed intention to hinder or defraud creditors. Id.
Additionally, the party attacking the conveyance as fraudulent as to them has the burden of establishing the fraud. Mullins v. Riopel, 76 Mass. 633 (1948). Where facts appear sufficient to raise a presumption that a conveyance is in fraud of the transferor’s creditors, the burden of showing good faith shifts to the transferor. Widgery v. Haskell, 5 Mass. 144 (1809).
The undisputed facts of this case are as follows. O’Toole conveyed the property to Sesia without fair consideration.[4] It further appears that O’Toole was insolvent or made to be insolvent upon the conveyance of the subject property. O’Toole admitted at her deposition that she conveyed the property to safeguard the property from creditors. Moreover, Comiskey went out of business only nine days after the property was conveyed. Based on these facts it could be determined that the conveyance should be set aside because the transfer was made with intent to defraud her creditors. Hoolt v. Hoolt, 862 F.Supp. 644 (D. Mass. 1994); Walmorth Co. v. Locke, Stevens and Sanitas, 130 Mass. 557 (1938); Gibbs v. Chase, 10 Mass. 125 (1813). See also M.G.L.c. 109A, §6.
Notwithstanding these facts, the defendants have alleged that the conveyance was pursuant to and in protection of an oral trust. If OToole held only bare record title to the property then her financial condition would not be affected by either receipt of or by transfer of title. At the time of the attachment she would have had no interest in the subject property and, therefore, the attachment would have been ineffective. In re Gustie, 32 B.R. 466 (Bkrtcy. D. Mass. 1983), affirmed 36 B.R 473; M.G.L.c. 109A, §§4, 7. Furthermore, even though M.G.L.c. 109A, §§4 and 7, prohibit the enforcement of an oral trust in land, they do not prevent the parties from recognizing the oral agreement. Trovato v. Walsh 363 Mass. 533 (1973); Perking v. Hilton, 329 Mass. 291 (1952). Genuine issues of material fact exist as to whether O’Toole had more than legal title as trustee in the subject property as conveyed to Sesia as successor trustee.
ORDER
For the foregoing reasons, NGMI’s motion for summary judgment is ALLOWED on the issue of liability, with respect to Count I, but is DENIED with respect to Count II, concerning fraudulent conveyance.

This agreement indemnified NGMI against any and all liability, loss, costs, damages, attorney fees and other expenses, which NGMI would incur by reason of its issuance of any bonds on behalf of Comiskey.

NGMI has incurred loss payments of $605,316.74. Additional costs and expenses on the amount of $80,864.52 and recovered $138,995.71.

There is a dispute as to whether OToole initially attempted to convey the property in June 1993 because of an unrelated unsecured mortgage or whether she initially conveyed the property in November 1993 because of the financial risks of the Comiskey Co.

The deed states on its face that the property was conveyed for less than $100.00. Moreover, both OToole and Sesia stated in their depositions that the property was conveyed without the payment of consideration.